# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

NATHAN BLANKENSHIP,

        Plaintiff,

   v.                                        ACTION NO. 2:03cv850

GARY BASS,
JIM PARKS,
DUNCAN MILLS,
ALTON BASKERVILLE,
L. GALLOWAY,
SHANDA DAWKINS,
GENE JOHNSON,
W.P. ROGERS,
P.M. HENICK, and
HAZEL BOOTH BROWN,

        Defendants.

## OPINION AND FINAL ORDER

Nathan Blankenship ("Plaintiff"), a Virginia inmate, brings this pro se action pursuant to 42 U.S.C. § 1983, to redress alleged violations of his rights under the First and Fourteenth Amendments of the Constitution of the United States. Specifically, Plaintiff claims that Defendants violated 1) the Free Exercise Clause of the First Amendment by denying him a kosher "Common Fare" diet, a kosher vegan diet, supplements and cosmetics; and 2) the Equal Protection Clause of the Fourteenth Amendment by providing the kosher Common Fare diet to other inmates and by suggesting that Plaintiff attend Jewish services.[1] Upon Plaintiff's motion,

---

[1]The Court has read and reviewed the entirety of Plaintiff's submissions, in which he alleges a galaxy of other claims relating to Powhatan's procedures for processing and responding to his grievances and requests. However, only those claims identified as cognizable constitutional violations are addressed below. Plaintiff's Complaint also alleges violations of the Fifth Amendment of the United States Constitution. However, because the Plaintiff's claims involve the conduct of state prison officials, the Court has construed any alleged Fifth Amendment violation under the Fourteenth Amendment. In response to the instant Motion, Plaintiff also claims that Defendants deprived him of his right to meet

the Court hereby **DISMISSES** without prejudice Plaintiff's claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc and cc-1 (2005).[2] For these alleged violations, Plaintiff seeks monetary damages to remedy "spiritual injuries."[3] Plaintiff also requests the Court to grant a variety of vague and all-encompassing declaratory and injunctive relief relating to Plaintiff's access to a kosher vegan diet and the rights of Yahwist followers regarding their religious dietary needs.

This action is before the Court on the Motion of Gary Bass, Jim Parks, Duncan Mills, Alton Baskerville, L. Galloway, Shanda Dawkins, Gene Johnson, W.P. Rogers, P.M. Henick, and Hazel Booth Brown ["Defendants"][4] for Summary Judgment.[5] For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's claim for monetary damages based on Defendants' defense of good faith qualified immunity. Defendants' Motion for Summary Judgment is **GRANTED** with respect to all of Plaintiff's claims relating to

---

[2] regularly for Yahwist services and observe his religion on the Sabbath. See, e.g., Pl.'s Br. in Opp'n. to Ds.' Mot. for Summ. J. at 4. However, these additional claims are not properly before the Court and will not be considered for this Motion. On June 24, 2004, Plaintiff sought leave to further amend his Amended Complaint to include additional claims under 42 U.S.C. § 1983 of alleged violations of Plaintiff's constitutional rights . (Doc. 21.) By Order filed July 7, 2004, the Court denied Plaintiff's Motion to Further Amend Complaint. (Doc. 23.) The Court's Order informed Plaintiff that Federal Rule of Civil Procedure Rule 15(a) allows Plaintiff to amend his complaint as of right only "once as a matter of course at any time before a responsive pleading is served," and then only by leave of the Court. FED. R. CIV. PROC. R. 15(a); Id. at 4. The Court did not grant leave because Plaintiff had not exhausted his administrative remedies relating to the additional grievances.

[2] Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl.'s Resp.") states that he "hereby 'withdraws' all references in his claims to . . . violations of 42 U.S.C. §§ 2000cc and cc-1." Pl.'s Resp. at ¶ 3. (Doc. 35.)

[3] Plaintiff withdrew claims to mental or emotional injuries, but not "spiritual injuries." Pl.'s Resp. at ¶ 3.

[4] A person seeking relief under § 1983 must show that a person acting under color of state law deprived him of a constitutional right. As employees of Powhatan Correctional Center, Defendants are considered "persons" under the statute and acted under color of state law.

[5] In light of the Court's Order on the instant Motion, the Court need not address Defendants' request, argued for the first time in their Brief in Support of Motion for Summary Judgment ("Ds.' Br. in Supp. of Mot. for Summ. J.") that the Court dismiss Hazel Booth Brown and Gene Johnson for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6).

a vegan diet, supplements and cosmetics, since Plaintiff has failed to proffer evidence that his religion requires such accommodations.  Plaintiff also requests injunctive relief relating to his religious requirement for a kosher diet, which he claims in a sworn affidavit that he is not receiving.  However, because Defendants have conceded in their pleadings that Plaintiff is entitled to the kosher Common Fare diet and further claim that he is now receiving it, his claim for injunctive relief is moot.  Accordingly, Plaintiff's claims relating to a kosher diet are **DISMISSED** without prejudice, reserving Plaintiff's right to file further claims in the event that Plaintiff is not provided access to the kosher Common Fare diet.

<u>I. Procedural History</u>

Plaintiff filled out a Complaint Form, which was received on November 26, 2003 and conditionally filed by the Court on December 4, 2003.  (Doc. 1.)  On January 8, 2004, Plaintiff paid the full filing fee of $150.00.  On December 12, 2003, Plaintiff filed a Motion to Amend his Complaint.  (Doc. 3.)  By Order filed January 30, 2004, the Court granted Plaintiff's Motion to Amend and sent Plaintiff the Court's questionnaire so that Plaintiff could amend his complaint and submit documentation of administrative exhaustion.  (Doc. 5.)  By order filed May 26, 2004, the Court filed Plaintiff's following responses as part of Plaintiff's Amended Complaint: 1) a document styled "Affidavit and Information Supporting Exhibits," which includes copies of Plaintiff's grievances and responses (Doc.17); 2) Plaintiff's Amended Complaint ("Pl.'s Am. Compl.") (Doc. 18); and 3) a supplemental page, "page 24-A," (Doc. 19).  As required, Plaintiff demonstrated that he exhausted his administrative remedies.  Defendants filed the instant Motion for Summary Judgement on October 14, 2004.  (Doc. 30.)

In accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), Plaintiff was given an opportunity to respond to Defendants' Motion for Summary Judgment with any material that he wished to offer in rebuttal.  (Doc. 32.)  The Court also instructed Plaintiff that failure to

submit any materials could result in an adverse judgment based on Defendants' Motion and accompanying affidavits.  Id.  On October 25, 2004, Plaintiff motioned for an extension of time to respond.  (Doc. 33.)  The Court granted an extension, setting Plaintiff's response due date for December 6, 2004.  (Doc. 34.)  On December 2, 2004, Plaintiff responded to Defendants' Motion for Summary Judgment by submitting Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Br. in Opp'n. to Ds.' Mot. for Summ. J."), several attachments, eleven affidavits, including his own, and one letter from a Yahwist elder.  (Doc. 36.)  Plaintiff certifies that he mailed a copy of his reply to counsel on November 23, 2004.  (Doc. 37.)  Accordingly, Defendants' Motion for Summary Judgment is now ripe for judicial determination.

## II. Facts

Since February 1, 2001, Plaintiff has been an inmate at Powhatan Correctional Center ("Powhatan"), a Virginia Department of Corrections facility ("VDOC").  Pl.'s Am. Compl. at ¶ 2. Plaintiff has been practicing Yahwism since the Spring of 1996.  Pl.'s Aff. at ¶ 9.  The regular Powhatan prison menu does not provide meals which meet the strict standard of a kosher diet. For that reason, Powhatan created the Common Fare diet, which is a diet that accommodates inmates that require a kosher diet, such as followers of Judaism, Muslim and Nation of Islam. Dawkins Aff. at ¶ 4.  The Common Fare diet is kosher, but it is not vegan or vegetarian. However, vegetarian substitutes are made available to the general prison population at every meal.  On December 20, 2002, Plaintiff requested to be placed on the kosher Common Fare diet.

The Powhatan procedure for evaluating religious dietary requests is governed by Division Operating Procedure ("DOP") 611 and 831.  In order to determine whether the request is warranted, Powhatan provides an initial hearing under the Institutional Classification Authority ("ICA").  Dawkins Aff. at ¶ 6.  The decision is then reviewed by Central Classification Services ("CCS").  Id.  Prior to the ICA hearing, Plaintiff was asked to submit a Common Fare Diet

Checklist (Dawkins Aff., Attach. 4), in which Plaintiff indicated that he had been practicing Yahwism since the Spring of 1996, did not participate in religious services or holidays at Powhatan but was trying to "get the religion up and running." Id. The Checklist gave Plaintiff an opportunity to present additional evidence that Plaintiff desired to be considered regarding his request for the Common Fare diet. In the corresponding space, Plaintiff responded that the diet "conforms close to our dietary beliefs to [sic] our faith" and that it was "healthy." Id.

On March 13, 2003, the ICA hearing was held to address Plaintiff's request, whereby it was determined that Plaintiff had not provided "enough evidence to substantiate inmate's claim that he needs the common fare diet for religious reasons of a sincere religious belief." Pl.'s Ex. 9. The ICA decision was based on a variety of information, including Plaintiff's religious practices prior to incarceration, his post-incarceration observance of religious holidays and services, his answers to the Common Fare Diet Checklist, and a memorandum submitted by Powhatan's Institutional Chaplain addressing Plaintiff's involvement in religious services. Dawkins Aff. at ¶ 6-7. The Chaplin's memorandum indicated that Plaintiff's name was not on any religious group's roster and that he claimed to be a Messianic Jew and part of the African Hebrew Israelite faith. Dawkins Aff., Attach. 3.

On June 23, 2003, CCS reviewed and approved the ICA decision, stating that Plaintiff's "stated religious affiliation does not require the diet." Dawkins Aff. at ¶ 9. In response to this action, Plaintiff reinstated grievance procedures to renew his request for the kosher Common Fare diet and provide additional evidence about Yahwism. In one such grievance form, Plaintiff complained that fellow Yahwist inmate James Taylor was approved for Common Fare while he was not. In response, Warden Alton Baskerville ("Baskerville") states the following:

> You arrived at Powhatan Correctional Center on 2/01/01 and have not
> yet participated in any religious services. You could participate in the

5

> Jewish services, the same as other inmates. Paperwork was provided
> to the group of inmates who wish to begin a group for the "yahwist"
> in late 2002 and to this date has not been completed and submitted to
> the Chaplain.  Some of the inmates you had listed as ones who wish
> to participate in the Yahwist Services attend the Jewish Services,
> including inmate James Taylor.

Pl.'s Ex. 10 at ¶ 4.  At the same time Plaintiff was pursuing a Common Fare rehearing, Plaintiff

converted to vegetarianism for religious purposes and stopped eating meat provided at his meals.

Pl.'s Ex. 166 at 9.  Soon after, Plaintiff became a vegan, also for religious purposes.  Id.  Plaintiff

then began to submit numerous formal and informal grievances to obtain a vegan diet as a

religious requirement of Yahwism.  Plaintiff's requests were denied because he failed to produce

evidence that Yahwism requires a vegan diet, in addition to a variety of institutional concerns,

including cost, security, nutrition, and other logistic difficulties in accommodating Plaintiff's diet.

 Dawkins Aff. at ¶ 11-14.

## III. Analysis

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record

as a whole and in the light most favorable to the nonmoving party, determines that there exists no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of

law.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248-50 (1986); Terry's Floor Fashions v. Burlington Indus., 763 F.2d

604, 610 (4th Cir. 1985).  Once a party has properly filed evidence supporting the motion for

summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings,

but must instead set forth specific facts illustrating genuine issues for trial.  Celotex Corp., 477

U.S. at 322-24.  Such facts must be presented in the form of exhibits and sworn affidavits.

Failure by Plaintiff to rebut Defendants' Motion with such evidence on his behalf will result in

summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

A. Good Faith Qualified Immunity

Defendants state that they are entitled to good faith qualified immunity for their actions. Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as the conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The United States Court of Appeals for the Fourth Circuit determined that where the record does not create a genuine issue regarding defendant's conduct, summary judgment is "a particularly appropriate procedure for determining an official's entitlement to qualified immunity." Torchinsky v. Siwinski, 942 F.2d 257, 261 (4th Cir. 1991) (citing Harlow, 457 U.S. at 816-17)); Turner v. Dammon, 848 F.2d 440, 443 (4th Cir. 1998). As none of the material facts regarding Defendants' actions are in issue, the Court will evaluate Defendants' claim to good faith qualified immunity.

The Fourth Circuit follows a three-tiered analysis for evaluating a qualified immunity defense. The first step is to "identify the specific constitutional right allegedly violated . . . ." Collinson v. Gott, 895 F.2d 994, 998 (4th Cir. 1990) (Phillips, J., concurring). The second step is "to inquire whether at the time of the alleged violation [the right] was clearly established, then [the third step is] to further inquire whether a reasonable person in the official's position would have known that his conduct would violate that right." Id. Thus, the threshold inquiry is "whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley,

500 U.S. 226, 232 (1991) ("Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.").  In this case, Plaintiff alleged constitutional violations under the Free Exercise Clause of the First Amendment, as well as violations the Equal Protection Clause of the Fourteenth Amendment.  The Court will address these alleged violations in turn.

B. Free Exercise Clause of the First Amendment

Plaintiff maintains that in order to practice his religion of Yahwism, he must be provided with a kosher vegan diet, supplements and cosmetics.  Pl.'s Br. in Opp'n. to Ds.' Mot. for Summ. J. at ¶ 2.  However, it is necessary for the Court to consider the kosher and vegan aspects of Yahwism separately, due to the disparate evidence Plaintiff has submitted to the Court to support his religious dietary claims.

1. Plaintiff's Claim to a Kosher Diet

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. CONST. amend. I.  In order to establish a right under the Free Exercise Clause of the First Amendment, Plaintiff must make two threshold showings.  First, Plaintiff must show that he sincerely holds his religious beliefs; second, Plaintiff must show that his claims are rooted in that religious belief, and not in "purely secular" concerns.  Wisconsin v. Yoder, 406 U.S. 205, 215-16 (1972); Thomas v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 713-14 (1981); Mitchell v. Angelone, 82 F. Supp. 2d 485, 490 (E.D. Va. 1999).

For purposes of summary judgment, the Court finds that Plaintiff has produced some evidence which could demonstrate that Plaintiff's sincerely held belief in Yahwism requires a

kosher diet.  Plaintiff's exhibits, including letters from Yahwist elders and various Yahwist publications, indicate that Yahwists observe a kosher diet.  Thus, Plaintiff has alleged a violation of his right to follow the dictates of his religion by being denied the kosher Common Fare diet. Thus, for purposes of Defendants' qualified immunity defense, the Court must evaluate whether at the time of the violation Plaintiff's right to the kosher Common Fare diet was "clearly established" and whether "a reasonable person in the official's position would have known that his conduct would violate that right."  Collinson, 895 F.2d at 998 (Phillips, J., concurring).

In determining whether Plaintiff's rights were "clearly established" when Defendants acted, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Swanson v Powers, 937 F.2d 965, 968 (4th Cir. 1991), cert. denied, 112 S. Ct. 871 (1992).  The unlawfulness of the action must have been "apparent" as assessed by pre-existing law so that officers may have fair warning in carrying out their duties.  Korb v. Lehman, 919 F.2d 243, 247 (4th Cir. 1990) (citing Anderson, 483 U.S. at 639, 640 (citations omitted)).

The third part of the qualified immunity analysis evaluates whether a reasonable officer could have believed that his conduct was lawful in light of clearly established law.  This determination is guided by the Fourth Circuit's analysis in Collinson:

> [T]he assessment whether a "reasonable person" in the official's position would have known that his conduct would violate "clearly established" rights must be made on the basis of information actually possessed at the time by the official, or then readily available to him . . . .  The toleration accorded by the objective test to "good faith" mistakes of judgement traceable to unsettled law, or faulty information, or contextual exigencies, is deliberately designed to give protection "to all but the plainly incompetent of those who knowingly violate the law" in order to avoid undue inhibition of public officials in the discharge of their discretionary duties.

Collinson, 895 F.2d at 998 (Phillips, J., concurring) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986) (citations omitted)).

Based upon the evidence before the Court, it is far from clear that Defendants' actions violated "clearly established" law or that the unlawfulness of Defendants' actions would be apparent to reasonable officer.  The law governing the free exercise of religion in the prison context is well-established as requiring a sincerely held belief and that the asserted right is rooted in that belief.  Yoder, 406 U.S. at 215-16.  It is also well-established that where a prisoner establishes a threshold constitutional right, the validity of the prison regulation or procedure that infringes that right is tested by a reasonableness standard, not strict scrutiny.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safley, 482 U.S. 78, 84 (1987); Ephraim v. Angelone, 313 F. Supp. 2d 569, 575 (E.D. Va. 2003).

Thus, the specific right at issue appears to be whether Powhatan's procedure for determining whether an inmate's beliefs are sincerely held is reasonable.  If Defendants' procedure for evaluating Plaintiff's request was unreasonable according to "clearly established" law then its contours must have been addressed by the Supreme Court, the Fourth Circuit or the Virginia Supreme Court.  Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998).  However, no such court has outlined the method prison officials must follow in evaluating religious dietary requests.  Thus, Defendants' method of determining whether Plaintiff demonstrated a sincerely held belief is entitled to deference.  Shaheed v. Winston, 885 F. Supp. 861, 867 (E.D. Va. 1995); Jenkins v. Angelone, 948 F. Supp. 543, 546 (E.D. Va. 1996) (citing Turner, 482 U.S. at 89).

In making this determination, Defendants had the following facts before them.  First, Plaintiff waited almost two years upon arriving at Powhatan before initiating any request for an alternative religious diet.  As stated on the Common Fare Checklist, the reason Plaintiff gave for

this delay was that he thought he might be transferred.  However, it would not be unreasonable for Defendants to question the sincerity of Plaintiff's belief, or whether a kosher diet was truly required by that belief, when the religious diet may be put on hold for nearly two years pending a possible transfer.  Second, Plaintiff's given reasons for requesting Common Fare were because it "conformed close" to his religion and was "healthy."  Given Plaintiff's equivocal language and the nature of the request, it would not be unreasonable for Defendants to interpret these statements as Plaintiff's attempt to obtain a religious diet that he preferred for health reasons, rather than one that was required by a sincerely held belief.

Third, although Plaintiff reported on the Checklist that he was trying to get Yahwism "up and running," there was no evidence that Plaintiff had been observing any religious services at the time he made his request for the diet.  On the other hand, according to Plaintiff's exhibits, Yahwists observe most of the same religious practices, ceremonies, and holidays as followers of Judaism.  Thus, Defendants could assume that a practicing Yahwist would attend the existing Jewish services, especially since other Yahwists had been attending Jewish services, including James Taylor, the fellow Yahwist inmate who had been granted the kosher Common Fare diet. Furthermore, while Plaintiff was attempting to obtain the kosher Common Fare diet, Plaintiff converted to vegetarianism, then became a vegan, and began to file numerous formal and informal grievances to obtain a vegan diet.  Thus, Defendants were being repeatedly grieved and petitioned to accommodate as religious requirements Plaintiff's newly-acquired vegan dietary and cosmetic needs, while Plaintiff was simultaneously pursuing the kosher Common Fare diet.

In light of these circumstances, it appears that a reasonable officer in the Defendants' position could reasonably question whether Plaintiff possessed a sincerely held belief and whether the dietary requirements of his religion were what he claimed them to be.  While the creation of the kosher Common Fare diet is evidence of Defendants' awareness of the need to

accommodate legitimate religious dietary needs, the discretionary method they employed to guard against the proliferation of frivolous or secular requests is entitled to judicial deference, especially since no proper constitutional method for making this necessary determination has been clearly established.  While the Court may find sufficient evidence in the record that Plaintiff's sincerely held religion requires a kosher diet, in light of all the information before Defendants, it appears clear that a reasonable officer in the Defendants' position would not know that the decision to deny Common Fare violated "clearly established" law.  Collinson, 895 F.2d at 998.  Therefore, the Court **GRANTS** Defendants' defense of good faith qualified immunity with respect to any Free Exercise violation due to their denial of the kosher Common Fare diet.

        2. Plaintiff's Claim to a Vegan Diet, Cosmetics and Supplements

        The issue before the Court in determining whether Defendants' actions violated the Free Exercise Clause is whether Plaintiff's claim to a vegan diet, supplements, and cosmetics is rooted in Yahwism and not in "purely secular" concerns.  Thomas, 450 U.S. at 713-14; Jenkins, 948 F. Supp. at 546.  For purposes of summary judgment, the Court will assume that Plaintiff's belief in Yahwism is sincerely held.  After carefully reviewing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented no evidence that his request for a vegan diet, cosmetics and supplements is rooted in Yahwism.

        Courts recognize that the particular religious diet claimed must be rooted in the religion itself.  For example, in Ephraim, 313 F. Supp. 2d at 578, a Virginia inmate's claim that Christianity requires a vegan diet failed because he provided no objective evidence that the claim to a vegan diet was rooted in the religion.  Similarly, Plaintiff claims that his religion of Yahwism requires a vegan diet.  Plaintiff submits numerous exhibits to the Court to demonstrate his religious need for a vegan diet, including letters from Yahwist elders, several Yahwist publications, and Yahwist scriptures.  However, the Court has carefully considered all of this

12

evidence, and has found no representations whatsoever that Yahwism requires a vegan diet.[6]
Plaintiff's own affidavits and representations indicate that his belief is purely personal and it is
also recently developed.  At most, Plaintiff's evidence supports the conclusion that his dietary
requirements, although perhaps religiously inspired, are rooted in health aspects of a vegan diet
and may be a health preference of some members of the Yahwist faith.[7]

Thus, the Court finds that with respect to Defendants' denial of a vegan diet, supplements
and cosmetics, Plaintiff has not established a constitutional violation since his requests are not
rooted in Yahwism.  In Saucier v. Katz, 533 U.S. 194, 201 (2001), the Supreme Court held that
where no constitutional violation has occurred, the Court need not continue through the
remainder of the qualified immunity inquiry since the defense is dispositive.  Therefore, since
Plaintiff has failed to allege a cognizable constitutional violation with respect to any vegan food
or products, the Court hereby **GRANTS** Defendants' defense of good faith qualified immunity.

C. Equal Protection Clause of the Fourteenth Amendment

Plaintiff claims that Defendants violated the Equal Protection Clause of the Fourteenth
Amendment by providing the Common Fare diet to other inmates, while denying it to him, Pl.'s
Am. Compl. at 9.  He also claims that Baskerville's April 15, 2003 grievance response, which
suggested that Plaintiff could attend Jewish services as other Yahwist inmates had been doing,
constitutes religious discrimination by "coercing and pressing" Plaintiff into Judaism.  Pl.'s
Compl. at ¶ 5.

---

[6]On the contrary, Plaintiff's evidence tends to show that Yahwism does *not* require a vegan diet.  For example,
Plaintiff admits that a vegan diet is not orthodox to Yahwism and that not many adherents believe that a vegan or even
a vegetarian diet is scripturally commanded.  Pl.'s Aff. at ¶ 6-7; Pl.'s Decl. at ¶ 7.  Furthermore, Plaintiff admitted that
while he was pursuing the kosher diet, he converted to vegetarianism, then became a vegan as a result of his personal
determination that his religion required such a diet.  Pl.'s Ex. 166 at 9.

[7]The only piece of evidence that references Plaintiff's claim, a letter written by a Yahwist elder, states only that
*some* Yahwists practice vegetarianism due to their concern with contaminated meats from current farming practices.  Pl.'s
Ex. 17A.

The Equal Protection Clause of the Fourteenth Amendment provides that no state may deny to any person within its jurisdiction the equal protection of the laws.  U.S. CONST. amend. XIV, § 1.  The Equal Protection Clause applies to prohibit prison officials from "'treating differently persons who are in all relevant aspects alike.'"  Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)).  As a threshold matter, Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional and purposeful discrimination."  Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001); Blagman v. White, 112 F. Supp. 2d 534 (E.D. Va. 2000).

Here, Plaintiff has not provided any evidence whatsoever that denying Plaintiff Common Fare was the result of any intentional or purposeful discrimination.  All allegations of improper motivation rest upon Plaintiff's inferences alone.  The mere fact that others had been approved for the Common Fare diet, while Plaintiff was not, does not amount to an Equal Protection violation.  Likewise, Plaintiff's claim that the suggestion for him to attend Jewish services cannot survive summary judgment because Plaintiff has offered no evidence to demonstrate a discriminatory purpose, nor can the Court construe any such purpose from the record.  Baskerville's letter indicated that the reason he suggested that Plaintiff attend the services was because other Yahwist inmates had been attending them, including James Taylor, who was approved for Common Fare.  In addition, Yahwists and Jews observe most of the same ceremonies, practices, and holidays.  As a result, Baskerville could reasonably believe that the Jewish services would comport with Plaintiff's religious practices and beliefs.  Furthermore, at the time Baskerville sent his response, paperwork had been provided for Yahwists to begin their own services, but none had been returned.

14

Although Plaintiff infers a discriminatory purpose from the suggestion that he attend Jewish services, Plaintiff proffers no objective evidence of such purpose.  Therefore, since Plaintiff has failed to allege a cognizable Equal Protection violation, Defendants' qualified immunity defense is dispositive.  Saucier, 533 U.S. at 201.  Accordingly, the Court **GRANTS** Defendants' defense of good faith qualified immunity with respect to the alleged violations of the Equal Protection Clause.

D. Injunctive and Declaratory Relief

Plaintiff has made a variety of vague and all-encompassing requests for injunctive and declaratory relief relating to his religious requirements for kosher vegan food and products.  Because Plaintiff has failed to proffer evidence that his religion requires a vegan diet, supplements or cosmetics, Plaintiff is not entitled to any injunctive and declaratory relief to accommodate those requests.  Plaintiff has also requested the Court to order Defendants to approve Yahwism for the kosher Common Fare diet and provide Plaintiff access to the diet.  Plaintiff has proffered evidence that his religion requires the kosher Common Fare diet, and he asserts in his sworn affidavit that he is not receiving it.  Pl.'s Aff. at ¶ 20.  However, as of September 24, 2004, VDOC has approved Yahwism to receive the kosher Common Fare diet, see Cei Aff. at ¶ 5, and Defendants further claim that he is now receiving it.  Thus, Plaintiff's claims with respect to the kosher Common Fare diet are moot.  See Steffel v. Thompson, 415 U.S. 452, 460 n.10 (1974) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.").

## IV. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment on the issue of monetary damages is **GRANTED** because Defendants have established a defense of good faith qualified immunity.  Because Plaintiff has failed to proffer evidence that his religion requires

15

vegan accommodations, the Court **GRANTS** Defendants' Motion for Summary Judgment with respect to all claims relating to a vegan diet, cosmetics and supplements.  Because Defendants have conceded in their pleadings that Plaintiff is entitled to the kosher Common Fare diet and further claim that he is now receiving it, these claims relating to Plaintiff's access to a kosher diet are moot.  Accordingly, Plaintiff's claims to declaratory and injunctive relief relating to a kosher diet are **DISMISSED** without prejudice, reserving Plaintiff the right to file further claims in the event that Plaintiff is not provided access to the kosher Common Fare diet.

Plaintiff is advised that he may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received by the Clerk within thirty (30) days from the date of this order.  If Plaintiff wishes to proceed in forma pauperis on appeal, the application to proceed in forma pauperis is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED**.

                        /s/
                HENRY COKE MORGAN, JR.
                SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

September 26, 2005

16